# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| JASON LAMONTE NICKERSON, | : | |
| Petitioner, | : | |
| | : | |
| v. | : | C.A. No. 15-014ML |
| | : | |
| ASHBEL T. WALL, | : | |
| Respondent. | : | |

## REPORT AND RECOMMENDATION

Patricia A. Sullivan, United States Magistrate Judge

*Pro se* Petitioner Jason Lamonte Nickerson, a state prisoner serving a fifty year[1] sentence at the Adult Correctional Institutions based on his conviction for the rape of a child, has filed a petition under 28 U.S.C. § 2254 for a Writ of Habeas Corpus by a Person in State Custody. The State of Rhode Island responded with a motion to dismiss, which has been referred to me for preliminary review, findings and recommended disposition pursuant to 28 U.S.C. § 636(b)(1)(B). While this motion was pending, Petitioner supplemented his arguments in opposition with a Motion for Judgment on the Pleadings (ECF No. 8), which asks this Court to grant the writ and order his release, and a Motion for Preliminary Injunction (ECF No. 9), which argues that, because his petition is likely to succeed on the merits and he is not a flight risk, he should be released on personal recognizance while this petition is pending. Both of these motions also have been referred for report and recommendation.[2]

---

[1] Petitioner was sentenced to sixty years, with fifty years to serve and ten years suspended with probation. State v. Nickerson, 94 A.3d 1116, 1124 (R.I. 2014).

[2] In light of Petitioner's *pro se* status, the Court has accommodated his request for an extension to file a reply to close out the briefing of these motions and delayed issuance of this report and recommendation to allow him to do so; as of this writing, nothing has been filed. In the meantime, Petitioner has filed a new motion, captioned "Petitioner-Initiated Motion for Summary Dismissal/Judgment" (ECF No. 12), and the State responded with a new motion to dismiss the "petitioner-initiated motion" (ECF No. 13). Because the first three motions are now fully

When the tangled procedural history of the Petitioner's claims is laid straight, it becomes plain that Petitioner has not yet exhausted two of his claims, and part of a third, in state court; accordingly, this matter presents this Court – and Petitioner – with the conundrum of a mixed petition. Further, Petitioner's exhausted claims are without merit: the Rhode Island Supreme Court's thoughtful and thorough opinion in State v. Nickerson, 94 A.3d 1116 (R.I. 2014), is neither contrary to, nor involves an unreasonable application of, clearly established federal law, either in holding that the trial evidence was sufficient to support the conviction or in concluding that the victim's clothing, lost after Petitioner's counsel examined and photographed it but before the trial began, was without evidentiary significance. Finally, I do not find that Petitioner has established the good cause required for this Court to stay and abey the petition while he exhausts the unexhausted claims. Accordingly, I recommend that Petitioner be given the opportunity to dismiss his unexhausted claims (Grounds One and Three and the unexhausted argument embedded in Ground Two). If Petitioner elects dismissal of the unexhausted claims, I recommend that the Court resolve the rest of claims presented in his petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus (ECF No. 1) by dismissing them because they do not present meritorious grounds for habeas relief. If Petitioner declines to dismiss his unexhausted claims, I recommend that the Court grant the State's Motion to Dismiss Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody (ECF No. 3) and dismiss the entire petition as a mixed petition for which there is no basis for a stay. Because the outcome of

---

briefed and ready for decision, rather than delay the issuance of this report and recommendation to await full briefing on the new motions (which have not yet been referred to me), I am issuing it. However, as explained *infra*, in the interest of judicial efficiency, I have reviewed and considered the materials and arguments developed so far in the newly filed and not-yet-referred motions. Unless subsequent briefing injects something novel, if they were referred, I would recommend that the "Petitioner-Initiated Motion for Summary Dismissal/Judgment" be granted to the extent that it seeks to add the attached materials to the record for consideration and denied to the extent that it seeks summary dismissal/judgment. Assuming the Court adopts this recommendation, I would also recommend that the State's new motion to dismiss be denied as moot.

Petitioner's motions for judgment on the pleadings and for preliminary injunction depends entirely on the merits of the petition, I recommend they be denied.

## I. BACKGROUND[3]

### A. The Underlying Charge

In June 2007, at well after 10:00 p.m., a troubled sixteen-year-old girl decided to walk from a friend's house in Providence to the hotel in South Attleboro where her family was living. State v. Nickerson, 94 A.3d 1116, 1119 (R.I. 2014). As the jury later found, she was picked up by Petitioner, who raped and beat her and threatened to kill her and her family if she reported the incident to the police. Id. at 1119-20. After she was released, she ended up at Hasbro Children's Hospital where she was seen by a specialist in child abuse pediatrics. Id. at 1120. Swab samples were taken from her body and from a cutting from her underwear, which were sent for DNA testing; the balance of her clothing was examined, but with no obvious damage, tears or stains suggesting the presence of blood or sperm, it was placed in storage at the Providence Police Department. Id. at 1121-22. Then, the case went cold for over three years until Petitioner was arrested on a different charge and his DNA profile was submitted to the Combined DNA Indexing System. Id. at 1122. When his DNA profile was found to be a match with the samples taken from the victim at the hospital, the victim was shown a photo array that included Petitioner, but was unable to identify him. Id. Nevertheless, a warrant issued for a buccal swab

---

[3] This factual information is drawn from an array of sources as indicated in the text. In addition to the Rhode Island Supreme Court's decision in State v. Nickerson, 94 A.3d 1116 (R.I. 2014) ("Nickerson"), the following formats are used for citation: the instant Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody (ECF No. 1) is cited as "Pet.;" Respondent's Motion to Dismiss under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody (ECF No. 3) is cited as "Motion;" Petitioner's Memorandum in Support of the Petition (ECF No. 1-1) is cited as "Pet. Mem.;" Petitioner's Reply to Respondent's Response to its Order to Show Cause & Motion to Dismiss (ECF No. 5) is cited as "Pet. Reply;" Petitioner's complaint for post-conviction relief filed in the Superior Court on August 25, 2014 (Nickerson v. Rhode Island, PM 2014-4214 (R.I. Super. Ct. Aug. 25, 2014)) is cited as "Post-Conv.;" Petitioner's Petition for a Writ of Error Coram Nobis filed in State v. Nickerson, SU-14-256-A (R.I. Sept. 29, 2014), is cited as "Coram Nobis."

from Petitioner and the samples taken from the victim were retested; the DNA testing resulted in the conclusion that it matched to a probable certainty of one in 5.6 quadrillion people.  Id.

Petitioner was indicted on seven felony counts and arraigned on June 15, 2011.  Id.; Pet., App. A.  Following pretrial proceedings and jury selection, the trial was scheduled to begin on April 2, 2012.  Motion at 2; Nickerson, 94 A.3d at 1122.

### B.     Pretrial Publicity

On the eve of the commencement of the trial, late in the evening of April 1, 2012, the Providence Journal posted on its website an article titled, "RI Man Faces Trial in 2007 Sex Assault Case."  Pet. at 5, 10, App. B.  The article attributes to the Office of the Attorney General a statement that Petitioner's trial was about to begin on the 2007 rape, that he was also facing a separate indictment for first-degree domestic sexual assault[4] and that it would be the first case to go to trial since the enactment of a DNA sampling statute that resulted in the collection of Petitioner's DNA after he pled no contest to second degree robbery.  Pet., App. B.  The article stated that Petitioner's DNA had been linked to another sexual assault in Connecticut but that victim declined to go forward.  Pet., App. B.  Petitioner claims that the information in the article was wrongly released to the media by the Office of the Attorney General.  Pet. at 5, 10. According to the petition, at least some of the information in this article had been suppressed by the trial justice.  Pet. at 5, 10.

Prior to the commencement of the trial, two jurors advised the court that they had come "in direct contact with the prosecution's perfectly timed extra-judicial statement."  Coram Nobis at 28.  On voir dire, both indicated that they had overheard television coverage, but absorbed only that the trial was starting and no other information; both affirmed that what they had heard

---

[4] While the direct appeal in the instant case was pending, a jury found Petitioner not guilty on this domestic sexual assault charge.  See State v. Nickerson, P1-2011-1834A (R.I. Super. Ct. June 2, 2014).

would not affect their "consideration of the case." Coram Nobis at 28-30. After this voir dire, the trial commenced. It is not clear from the petition either whether Petitioner lodged an objection to the way that the trial justice resolved this issue or, if he did object, what was the basis for the objection.

### C.    The Trial and Motions for New Trial and for Judgment of Acquittal

The focus of the trial was on the DNA samples taken from the victim's body and the underwear cutting and the credibility of the witnesses, particularly the victim and Petitioner. The rest of the victim's clothing was not in evidence because it had been lost while in police custody after it had been made available to the defense to examine and photograph. Nickerson, 94 A.3d at 1129. At trial, testimony established what had been observed from the examination of the clothing, including that it had no damage or tears and had not been tested because there were no obvious stains and because the presence of sperm had already been detected on the underwear. Id. at 1121 n.7, 1122 n.8. The trial justice discounted Petitioner's criticism of the loss of the clothing, noting that he had had an opportunity to photograph it and that the trial evidence had established that it was not evidence "of any evidentiary significance." Id. at 1129.

During the trial, Petitioner did not dispute that his sperm had been found on the victim's body and underwear; rather, he testified that he had had a sexual encounter with her several days before the rape when he engaged her services as a prostitute, and that he had an alibi for the time of the rape. Id. at 1123. Despite having given notice of his intent to rely on alibi witnesses, Petitioner did not call either of the witnesses he had identified, relying only on his own testimony to establish his alibi. Id. at 1123-24. The State presented the victim, the treating doctor, law enforcement officers and a health department analyst, among other witnesses. On April 11, 2012, the jury found Petitioner guilty on five of the seven counts. Id. at 1124. In response to

Petitioner's motion for a new trial and for judgment of acquittal, the trial justice properly examined whether the weight and credibility of the evidence was sufficient to support the jury's verdict. After finding the victim "very credible," including that her testimony was "effectively corroborated" by other witnesses, finding the doctor "credible," and finding no issues with the forensic evidence, she noted that Petitioner's "story [was] engineered [and] self-serving[,] was not corroborated[,] and lacked credibility;" she concluded that the jury rejected Petitioner's defenses of consent and alibi with "good reason to do so." Id. at 1129-30. Both motions were denied. Id. at 1130.

In a colloquy that occurred after the close of evidence to which Petitioner now ascribes great significance, his counsel renewed his motion for judgment of acquittal. Pet. Mem. at 2. The trial justice twice asked the prosecutor if the State wished to respond to the renewed motion, and she said, "No," three times. Pet. Mem. at 2. The court then denied the motion based on Petitioner's lack of credibility, noting that "it doesn't alter the court's earlier conclusion in denying the motion for judgment of acquittal." Pet. Mem. at 3. Petitioner interprets the prosecutor's three "Nos" as binding consent to "dismiss (without prejudice)/acquit [Petitioner] of ALL COUNTS." Pet. Mem. at 3. No one involved in the case adopted that interpretation of the prosecutor's remarks.[5] Following the three "Nos," the trial justice proceeded to impose sentence, the Rhode Island Supreme Court affirmed and the United States Supreme Court denied certiorari.

> **D.      Direct Appeal**

---

[5] Petitioner made a similar argument in his "Pertinent Waiver of Objection by the State to the Relevant Facts and Similar Petitioned Law" (ECF No. 7). He asserts that the State "admits to its misconduct to Grounds One, Three, and Four, also, via the waiver that it made to the United States Supreme Court," contending that the State's filing of notice in the Supreme Court that it did not intend to file a response to the petition for a writ of certiorari, ECF No. 7 at 3, amounted to an admission that his conviction is void. Id. The Court does not accept Petitioner's interpretation of this notice – on its face, it clearly indicates that it means that the State would not be filing a responsive document to his petition for writ of certiorari and nothing more. This argument will not be discussed further.

Petitioner filed a timely appeal to the Rhode Island Supreme Court. In his direct appeal, he argued that the chain of custody for the evidence kit was not sufficiently established and that the trial justice erred in denying his motion to exclude the testimony of the analyst from the Department of Health because her handwritten bench notes were not disclosed until the commencement of trial in derogation of his constitutional rights established by Brady v. Maryland, 373 U.S. 83 (1963). Nickerson, 94 A.3d at 1124, 1128. More pertinent to this habeas proceeding, he challenged the trial justice's denial of his motions for new trial and for judgment of acquittal, including her determination that the evidence presented was sufficient to establish guilt beyond a reasonable doubt. Id. at 1128. He also challenged her decision discounting the loss by the police of the victim's clothing, other than the underwear. Id. at 1129. As far as this record reveals, the direct appeal did not present to the state court the trial justice's decision to proceed with the trial despite the media coverage, including the Providence Journal article. Similarly, it also did not present the argument that the prosecutor's three "Nos" constituted a binding dismissal of the indictment requiring acquittal as a matter of law, such that Petitioner was thereafter exposed to double jeopardy.

In a detailed and thoughtful opinion, the Rhode Island Supreme Court rejected all of the arguments that Petitioner did present and affirmed his conviction. See Pet. at 1; Nickerson, 94 A.3d at 1118-19. On September 25, 2014, Petitioner filed a petition for a writ of certiorari in the United States Supreme Court challenging the Rhode Island Supreme Court's denial of his direct appeal. On April 27, 2015, the Supreme Court denied certiorari, terminating the direct appeal. Nickerson v. Rhode Island, No. 14-8785, 2015 WL 1879804, at *1 (Apr. 27, 2015).

E.     Post-Conviction Complaint

Petitioner initiated timely state post-conviction proceedings in the Superior Court on August 25, 2014.  See Nickerson v. Rhode Island, PM 2014-4214 (R.I. Super. Ct. Aug. 25, 2014).  In his complaint, he relied on a long litany of claims of error, including many that had been omitted from his direct appeal.  Post-Conv. at 1-2.  Pertinent to this habeas petition, he alleged, apparently for the first time in state court, that his trial was tainted by improper pretrial publicity caused by prosecutorial misconduct involving the deliberate leaking of suppressed evidence to the media.  Post-Conv. at 1-2.  The post-conviction complaint also challenged the denial of the motion for judgment of acquittal, but does not state the grounds; in particular, it does not reveal whether the new argument – the prosecutor's "Nos" mandated the granting of the motion for judgment of acquittal – would be asserted.

On November 7, 2014, the State answered the post-conviction complaint.  Petitioner now labels this action as "crafty;" he responded on November 14, 2014, by filing "Motion to Stay and Order of Protection Pending Appeal/Petition(s)."  See Nickerson v. Rhode Island, PM 2014-4214 (R.I. Super. Ct. Nov. 14, 2014).  It asked the Superior Court to stay the post-conviction proceeding while his petition for writ of certiorari was pending in the United States Supreme Court.  After filing this federal habeas on January 13, 2015, Petitioner returned to the Superior Court, which had not yet acted on his motion to stay the post-conviction proceeding.  On February 13, 2015, he filed a notice of dismissal without prejudice.  Nickerson v. Rhode Island, PM 2014-4214 (R.I. Super. Ct. Feb. 13, 2015).  Based on Petitioner's voluntary dismissal of the complaint, the post-conviction case is now listed as "closed" in the Superior Court docket.[6]

### F.    Petition for Writ of Error Coram Nobis

---

[6] See Rhode Island Judiciary Civil, Family & Probate Case Records Search Results for Jason Nickerson Query, http://198.7.236.41/default.aspx (last visited July 1, 2015).

One month after he filed the post-conviction complaint, on September 29, 2014, Petitioner initiated another proceeding, this one in the Rhode Island Supreme Court. See Nickerson v. State, SU 2014-0256 (R.I. Sept. 29, 2014). Captioned as a "Petition for a Writ of Error Coram Nobis Entered in the Supreme Court of Providence County," it asked the court to correct errors – "this Katrina-sized legally catastrophic hurricane of misconduct," Coram Nobis at 30, – that, if known at the time of judgment, would have revealed that his conviction and sentence are in violation of the state and federal constitutions and procedural rules. Id. at 29-30, 33-34. In his thirty-seven page petition (with twenty-seven additional pages of appendices), Petitioner fleshed out his arguments about the prejudicial effects of the pretrial media coverage, as well as the argument based on his theory that the prosecutor's "Nos" assented to granting the motion for judgment of acquittal.

The Coram Nobis did not long survive. On October 27, 2014, with Petitioner's post-conviction complaint still pending in the Superior Court, the Rhode Island Supreme Court summarily denied the Coram Nobis and denied as moot the motions that were filed with it. Nickerson v. State, SU 2014-0256, slip op. (R.I. Oct. 27, 2014). This summary disposition is consistent with well-settled Rhode Island law abolishing the writ of coram nobis in favor of the post-conviction procedure established by the General Assembly as the sole vehicle to obtain relief from conviction or sentence, as laid out in R.I. Gen. Laws § 10-9.1-1, *et seq.* Menard v. Wall, C.A. No. 13-659L, slip op. at 7 (D.R.I. Mar. 12, 2014) (R.I. Gen. Laws § 10-9.1-1 dictates that post-conviction review is exclusive remedy displacing other statutory and common-law remedies; final judgment in post-conviction relief action appealable to Rhode Island Supreme Court); State v. Duggan, 414 A.2d 788, 792 n.4 (R.I. 1980) ("substitution of the postconviction remedy for the writs of error coram nobis and habeas corpus . . . effected a change in procedure,

but not in substance. . . . the Post-Conviction Remedy Act [] incorporate[d] the substance of those remedies"). Because Petitioner's Coram Nobis was summarily dismissed in favor of the remedy created in the post-conviction procedure, by which he can prosecute his post-conviction complaint in the Superior Court and, if that is unavailing, by appeal to the Rhode Island Supreme Court, the Rhode Island Supreme Court's summary denial of the Coram Nobis is not a decision on the merits.[7]

### G.      Federal Civil Action under 42 U.S.C. § 1983

While not directly pertinent to the direct and collateral attacks on his conviction, it bears mentioning that, on March 26, 2015, Petitioner filed a new civil action in this Court pursuant to 42 U.S.C. § 1983. See Nickerson v. Providence Cnty., C.A. No. 15-114ML. It asserted claims of false incarceration pursuant to a void state criminal judgment (the same criminal judgment at issue here), malicious prosecution, slander and improper seizure of property; he sued "Providence County," Superior Court Justice Judith Savage, Attorney General Peter Kilmartin, Assistant Attorney General Shannon Signore, Amy Kempe and Laura Crimaldi. All claims were screened and dismissed as frivolous and for failure to state a claim based on the doctrines of judicial, prosecutorial and Eleventh Amendment immunity, as well as for the failure to link any allegations to several of the defendants. Id., ECF No. 6 at 2-5 (report & recommendation of Apr. 10, 2015). The case terminated on May 6, 2015. See id., ECF No. 10.

### H.      Federal Habeas Petition under 28 U.S.C. § 2254

In the midst of this procedural state of affairs – a petition for writ of certiorari still pending before the United State Supreme Court on the direct appeal, a post-conviction petition

---

[7] The "look through" principle, most recently discussed in Justice Ginsburg's concurrence to the denial of certiorari in Hittman v. Chatman, 135 S. Ct. 2126, 2127 (2015), is not applicable to this interpretation of the Rhode Island Supreme Court's summary denial of Petitioner's Coram Nobis. That principle applies only when there was a lower or collateral court decision to look through to; here there is none.

still pending in the Superior Court and a coram nobis petition summarily dismissed by the Rhode Island Supreme Court – Petitioner decided to bring his claims of error to this Court. On January 13, 2015, he filed this petition for habeas corpus pursuant to 28 U.S.C. § 2254 based on four Grounds:

1. Petitioner's trial and subsequent sentencing were tainted by pretrial publicity deliberately engineered by the State;

2. The trial justice weighed the evidence errantly and without applying her judgment with sufficient bases when she denied his motion for judgment of acquittal;

3. There was prosecutorial misconduct based on leaked, suppressed evidence given to the media; and

4. Petitioner's federal constitutional rights were violated because the clothing worn by the victim at the time of the assault was lost while stored at the Providence Police Station.

Two of them, Grounds One and Three, are focused on the claim of prejudicial pretrial publicity; these arguments were included in both the post-conviction complaint and in the Coram Nobis, but they were not presented to the state courts during Petitioner's direct appeal. The claim asserted as Ground Two focuses on the trial justice's denial of the motion for judgment of acquittal, which was challenged on his direct appeal; however, he now appears to rely principally on the prosecutor's "Nos," a sub-issue that was not presented on the direct appeal to the state courts, but was presented to the state courts for the first time in the Coram Nobis. Finally, Ground Four is based on the lost clothing – it is a plainly exhausted claim in that it was squarely presented to the Rhode Island Supreme Court on the direct appeal. With the United States Supreme Court's denial of certiorari, the Rhode Island Supreme Court's denial of the Coram Nobis, and the Superior Court's dismissal (on Petitioner's notice) of the post-conviction

proceeding, this § 2254 petition is now the only case still pending that challenges the legitimacy of Petitioner's conviction and resulting incarceration.

As directed by this Court, the State responded to the petition with a motion to dismiss. It argues that the two claims (Grounds One and Three) based on pretrial publicity are unexhausted. Motion at 10-12. It contends that Ground Two, which alleges that the trial justice weighed the evidence errantly in denying the motion for judgment of acquittal, is without merit in that she thoroughly and carefully considered the evidence and evaluated the credibility of witnesses so that the decision is objectively reasonable pursuant to Cavazos v. Smith, 132 S. Ct. 2 (2011) (per curiam). Motion at 3, 7-8. Finally, it contends that Ground Four lacks merit in that the circumstances of the lost clothing lack any of the indicia necessary to make their loss constitutionally material.

## II.    LAW

### A.    Standard of Review

The Antiterrorism and Effective Death Penalty Act ("AEDPA") significantly limits the scope of federal habeas review. See Bell v. Cone, 535 U.S. 685, 693 (2002) (AEDPA modified federal court's role in reviewing state prisoner habeas applications to prevent federal habeas "retrials" and to "ensure that state-court convictions are given effect to the extent possible under law"); McVeigh v. Rhode Island, No. CIV.A. 08-082 ML, 2008 WL 2977792, at *2 (D.R.I. July 14, 2008). Under AEDPA, habeas corpus relief is available only if the state court's adjudication of a claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States . . . ." 28 U.S.C. § 2254(d)(1). For a federal habeas court to find a state court decision contrary to federal law, it must determine that the state court applied a legal principle different from the

governing law set forth in Supreme Court cases, or decided the case differently from a Supreme Court case on materially indistinguishable facts. Bell, 535 U.S. at 694. Alternatively, to grant relief under the "unreasonable application" clause, the federal habeas court must determine the state court decision was not just incorrect, but also objectively unreasonable – a substantially higher threshold. Schriro v. Landrigan, 550 U.S. 465, 473 (2007). The federal habeas court's focus is not how well reasoned the state court decision is, but whether the outcome is reasonable. Hurtado v. Tucker, 245 F.3d 7, 20 (1st Cir. 2001). AEDPA also provides that the federal habeas court must presume that the state court's determination of factual issues is correct; petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). Additionally, the federal habeas court must defer to state court decisions regarding applicable state laws. See Mello v. DiPaulo, 295 F.3d 137, 151 (1st Cir. 2002); McVeigh, 2008 WL 2977792, at *2.

The Supreme Court has held that evidence is sufficient to support a conviction, so long as "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979) (emphasis in original). To that end, the Court instructed that a reviewing court "faced with a record of historical facts that supports conflicting inferences must presume – even if it does not affirmatively appear in the record – that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." Id. at 329. Thus, in Cavazos, 132 S. Ct. at 8, the United States Supreme Court reversed the granting of a writ of habeas corpus by the Ninth Circuit Court of Appeals. Criticizing that court for substituting its own judgment of the evidence for that of the jury, the Supreme Court took the opportunity to reiterate that a federal court is precluded from setting aside a state court decision

13

rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court, and may do so only in those situations where the state court decision was "objectively unreasonable." Id. at 4.

**B.     Exhaustion**

It is hornbook law that ordinarily habeas relief "shall not be granted unless it appears that . . . the applicant has exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A). This exhaustion requirement, which codified preexisting law, is born of the principle "that as a matter of comity, federal courts should not consider a claim in a habeas corpus petition until after the state courts have had an opportunity to act." Rose v. Lundy, 455 U.S. 509, 515 (1982). It follows that a petitioner's failure to present his federal constitutional claim to the state courts is ordinarily fatal to the prosecution of a federal habeas case. Coningford v. Rhode Island, 640 F.3d 478, 482 (1st Cir. 2011); Jackson v. Coalter, 337 F.3d 74, 86 (1st Cir. 2003). Thus, a writ of habeas corpus for a person in state custody will not be granted unless: "(A) the applicant has exhausted the remedies available in the courts of the State; or (B)(i) there is an absence of available State corrective process; or (ii) circumstances exist that render such process ineffective to protect the rights of the applicant." 28 U.S.C. § 2254(b)(1).

To achieve exhaustion, "a habeas petitioner bears a heavy burden to show that he fairly and recognizably presented to the state courts the factual and legal bases of [his] federal claim." Coningford, 640 F.3d at 482 (citing Adelson v. DiPaola, 131 F.3d 259, 262 (1st Cir. 1997)). In this Circuit, there are at least five ways in which a habeas petitioner may satisfy the "fair presentment" requirement. These include reliance on a specific provision of the Constitution, substantive and conspicuous presentation of a federal constitutional claim, on-point citation to federal constitutional precedents, identification of a particular right specifically guaranteed by

the Constitution and assertion of a state-law claim that is functionally identical to a federal constitutional claim. Scarpa v. Dubois, 38 F.3d 1, 6 (1st Cir. 1994); Laurence v. Wall, C.A. Nos. 13-128L, 12-129L, 2013 WL 5755089, at *12-13 (D.R.I. Oct. 23, 2013). "The appropriate focus . . . centers on the *likelihood* that the presentation in state court alerted that tribunal to the claim's federal quality and approximate contours." Nadworny v. Fair, 872 F.2d 1093, 1098 (1st Cir. 1989) (emphasis in original).

It is well settled that the exhaustion requirement is not satisfied if a state prisoner simply presents his claims to the state trial court. Currie v. Matesanz, 281 F.3d 261, 267 (1st Cir. 2002). Instead, a prisoner must invoke one complete round of the State's established appellate review process. 28 U.S.C. § 2254(c); Woodford v. Ngo, 548 U.S. 81, 92-93 (2006); see O'Sullivan v. Boerckel, 526 U.S. 838, 848 (1999) ("we ask not only whether a prisoner has exhausted his state remedies, but also whether he has *properly* exhausted those remedies, *i.e.*, whether he has fairly presented his claims to the state courts."). "[O]rdinarily a state prisoner does not 'fairly present' a claim to a state court if that court must read beyond a petition or a brief (or a similar document) that does not alert it to the presence of a federal claim in order to find material, such as a lower court opinion in the case, that does so." Baldwin v. Reese, 541 U.S. 27, 32 (2004). In addition, a petitioner must fairly present the substance (the legal and factual bases) of each claim in order to satisfy the exhaustion requirement as to each. See Brown v. Roden, No. 12-12000-RGS, 2014 WL 584261, at *7 (D. Mass. Feb. 11, 2014) (presenting factual underpinning of a claim without including legal basis for it does not satisfy exhaustion requirement); Laurence, 2013 WL 5755089, at *13 (ineffective assistance of counsel claim not exhausted where claim against attorney not asserted on direct appeal and briefing in supreme court factually vague and failed to cite federal constitutional precedent). Relatedly, exhausting a general claim will not suffice to

satisfy the requirement on unexhausted sub-issues.  See Danner v. Cameron, 955 F. Supp. 2d 410, 423 (M.D. Pa. 2013) (two exhausted sub-issues of forty-three total sub-issues does not fully exhaust overlying habeas claim; court addresses only exhausted sub-issues; remaining unexhausted sub-issues procedurally defaulted because not raised in state courts).

Because federal courts will review unexhausted claims only "in rare cases where exceptional circumstances of peculiar urgency are shown to exist" or where exhaustion would be futile, Rose, 455 U.S. at 515-16, a petitioner who files a mixed petition that includes both exhausted and unexhausted claims must resubmit it with only exhausted claims or voluntarily dismiss the unexhausted claims.  Chiellini v. Wall, No. CA 14-441-M, 2015 WL 3441910, at *3 (D.R.I. May 28, 2015) (citing Rose, 455 U.S. at 520); Brown, 2014 WL 584261, at *8 (petitioner given chance to dismiss unexhausted theory – if dismissal elected, court to resolve remainder of petition; if dismissal declined, court to dismiss entire petition).  A court may also stay a mixed petition, holding it in abeyance to allow the petitioner to exhaust all claims, and then adjudicate the petition after all claims have been exhausted.  Rhines v. Weber, 544 U.S. 269, 275-76 (2005).  However, courts will approve a stay of a mixed petition only in limited circumstance so as not to undermine Congress's design in AEDPA to encourage finality in criminal proceedings and to streamline the federal habeas process.  Chiellini, 2015 WL 3441910, at *3 (citing Josselyn v. Dennehy, 475 F.3d 1, 4 (1st Cir. 2007)).

## III.   ANALYSIS

### A.     Grounds One and Three – Pretrial Publicity

Grounds One and Three of the petition are essentially the same claim of error.  In Ground One, Petitioner alleges that his trial and subsequent sentencing were tainted by pretrial publicity deliberately engineered by the State; in Ground Three, he states that there was prosecutorial

misconduct based on leaked, suppressed evidence given to the media.  Pet. at 5, 10.  None of these issues were presented to the Rhode Island Supreme Court in connection with Petitioner's direct appeal.  Petitioner's post-conviction complaint raised them, but Petitioner first voluntarily stayed and then dismissed that case before either the Superior Court or the Rhode Island Supreme Court considered any of the arguments presented.  In arguing that these claims are exhausted despite this travel, Petitioner points to his Coram Nobis, which lays out the pretrial publicity issue in some detail.  He contends that the summary dismissal of the Coram Nobis by the Rhode Island Supreme Court demonstrates that these questions were fairly presented so that the exhaustion predicate to federal habeas has been satisfied.

This argument will not fly.  The mere improper filing of the Coram Nobis in the Rhode Island Supreme Court, promptly followed by summary dismissal, does not constitute a fair presentation of these issues.  Courts facing such a circumstance consistently find that summary denial of an improperly filed post-conviction application, for example based on the use of the wrong procedural ground, does not exhaust petitioner's state remedies; "[t]o hold otherwise would permit habeas petitioners to subvert the exhaustion doctrine by utilizing inappropriate state procedures where there is no possibility that the state will review the petition on the merits."  Dickerson v. Walsh, 750 F.2d 150, 154 (1st Cir. 1984); see, e.g., Gentry v. Lansdown, 175 F.3d 1082, 1083 (8th Cir. 1999) (petitioner did not fairly present claims to state courts where supreme court summarily denied state habeas petition; summary dismissal by supreme court permits inference that petition procedurally inappropriate); Vashey v. Rhode Island, No. CA 07-040 ML, 2007 WL 1202883, at *4-6 (D.R.I. Apr. 23, 2007) (petition unexhausted where Rhode Island Supreme Court denied relief on procedural grounds and another available avenue of relief in state court exists).  Thus, when a state supreme court summarily dismisses a filed claim

without opinion, it follows that the claims were denied on procedural grounds rather than on the merits so that they are not exhausted. Gentry, 175 F.3d at 1083 (summary dismissal by supreme court permits inference that petition procedurally inappropriate); Dickerson, 750 F.2d at 154 (dismissal of claim without opinion means it was denied on procedural grounds); Menard, slip op. at 8 (summary denial of defective petition for writ without stating reasons for denial does not exhaust post-conviction remedies).

Based on the foregoing, I find that, far from invoking one complete round of Rhode Island's established appellate review process, Woodford, 548 U.S. at 92-93, Petitioner has not fairly presented these arguments either to the Superior Court or to the Rhode Island Supreme Court. See O'Sullivan, 526 U.S. at 848 ("we ask not only whether a prisoner has exhausted his state remedies, but also whether he has *properly* exhausted those remedies, *i.e.*, whether he has fairly presented his claims to the state courts"); Barresi v. Maloney, 296 F.3d 48, 51 (1st Cir. 2002) ("a federal claim is not exhausted merely because the facts that underlie it have been previously placed before the state's highest court"). His failure to exhaust these claims is fatal to his prosecution of this petition. Dubois v. Rhode Island, 950 F. Supp. 2d 374, 378 (D.R.I. 2013) (citing Coalter, 337 F.3d at 86). Further, with the post-conviction process available to him, but for his own decision voluntarily to dismiss his post-conviction complaint, this is far from being one of the rare cases where exceptional circumstances of peculiar urgency are shown to exist or where exhaustion would be futile. Rose, 455 U.S. at 515-16; see O'Sullivan, 526 U.S. at 848; L'Heureux v. Pine, No. 97-166T, 1998 WL 61855, at *2 (D.R.I. Jan. 26, 1998). Accordingly, I recommend that the Court give Petitioner a chance to dismiss these unexhausted claims, which would permit the Court to resolve his exhausted claims on the merits. If he declines, I recommend that the entire petition be dismissed as a mixed petition.

**B.      Ground Two – Motion for Judgment of Acquittal**

The denial of Petitioner's motion for judgment of acquittal based on the insufficiency of the evidence was a primary focus of his direct appeal.  The Rhode Island Supreme Court carefully considered his argument that it should have been granted in its affirmance of the trial court's decision.  Nickerson, 94 A.3d at 1128-31.  The disposition of the issues considered in Nickerson are not contrary to, or an unreasonable application of, clearly established federal law.  28 U.S.C. § 2254(d)(1).  To the contrary, the state court properly examined the record and found that the trial justice had carefully reviewed the evidence presented to the jury, including an examination of the critical credibility issues that the jury resolved, and held that there was no error in her conclusion that the evidence, viewed in the light most favorable to the prosecution, was sufficient to permit a reasonable juror to find Petitioner guilty beyond a reasonable doubt.  Nickerson, 94 A.3d at 1130.  To criticize this decision would be to substitute the judgment of this Court for that of the jury, which the Supreme Court has counseled is well beyond the proper purview of a habeas petition; in any event, there is nothing that is "objectively unreasonable" about the State's decision.  Cavazos, 132 S. Ct. at 4.  Therefore, it would appear at first blush that Petitioner has exhausted his state remedies with respect to Ground Two.  Further, because his claim that the state decision constituted an unreasonable application of clearly established federal law is completely without merit, this Court should simply dismiss this claim of error as the State requests.

On closer inspection, however, another exhaustion problem emerges with Ground Two.  Although Petitioner did exhaust his argument that the trial evidence was insufficient, which is restated in this habeas petition and is now ripe for dismissal because it is without merit, he has never fairly presented, either to the Superior Court or to the Rhode Island Supreme Court, a

challenge to the denial of the motion for judgment of acquittal based on the ground that the prosecutor's "Nos" mandated that it be granted. See Pet. at 7, Pet. Mem. at 2-3. Apart from inserting this argument in his procedurally improper Coram Nobis, this "sub-issue" was never raised in state court.

The fact that Petitioner exhausted his general claim that the trial justice erred in denying the motion for judgment of acquittal does not suffice to satisfy the requirement on this unexhausted sub-issue, which arises under that general claim. See Danner, 955 F. Supp. 2d at 423. Since the Coram Nobis does not amount to a fair presentation of this sub-issue to the Rhode Island courts for purposes of exhaustion, see Dickerson, 750 F.2d at 154, Petitioner's argument that the trial justice erred in not treating the prosecutor's "Nos" as binding consent to the granting of his motion for judgment of acquittal is another unexhausted claim that Petitioner is procedurally barred from raising under 28 U.S.C. § 2254. Cristin v. Brennan, 281 F.3d 404, 410 (3d Cir. 2002); Bleau v. Wall, No. CA 10-103 ML, 2010 WL5553047, at *22 (D.R.I. Nov. 12, 2010). Accordingly, I recommend that the Court give Petitioner a chance to dismiss this unexhausted sub-issue before resolving exhausted claims in this petition on the merits. If he declines, I recommend that the entire petition be dismissed as a mixed petition.

**C.    Ground Four – Loss of Evidence by Police**

Petitioner's only fully exhausted claim is Ground Four, which focuses on the victim's lost clothing. Pet. at 12. He alleges that his rights under the Fifth, Sixth and Fourteenth Amendments were violated when, except for the underwear, the clothes worn by the victim at the time of the assault were lost while stored at the Providence Police Station. Pet. at 12. This argument was made to the Superior Court and was considered and rejected by the Rhode Island Supreme Court in its affirmance on direct appeal. Nickerson, 94 A.3d at 1129. For the reasons

that follow, I find that this determination is neither contrary to, nor an unreasonable application of, clearly established federal law; nor was it based on an unreasonable determination of the facts in light of the evidence presented. 28 U.S.C. § 2254(d)(1)-(2).

Petitioner grounds his argument that the loss of the clothing resulted in a state court decision that is contrary to federal law on California v. Trombetta, 467 U.S. 479 (1984), which holds that the Constitution imposes the duty on states to preserve evidence that might be expected to play a significant role in the suspect's defense. Id. at 488-89. However, Trombetta holds that lost evidence raises a constitutional issue only if it had exculpatory value that was apparent before the evidence was lost and was "of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." Id. at 489. Here, the potentially exculpatory facts – that the clothing was not damaged or torn, that it was provocative in appearance and that it had no stains and was never tested – were all available by other means in that they were presented by testimony from various witnesses during the trial. Nickerson, 94 A.3d at 1121-22, 1129 & nn.7-8. Importantly, Petitioner does not allege that his counsel observed anything else exculpatory about the clothing; therefore, he fails to sustain his burden of showing that the loss of the clothing prevented Petitioner from presenting exculpatory evidence. This lack of any basis for concluding that the lost evidence had apparent exculpatory value not available through other means is fatal to Petitioner's Trombetta-based argument.

Next, Petitioner points to Arizona v. Youngblood, 488 U.S. 51 (1988). It holds that the failure of the police to preserve "potentially useful," but not plainly exculpatory, evidence is not a denial of due process unless defendant can show bad faith. Id. at 57-58; see United States v. Laurent, 607 F.3d 895, 900 (1st Cir. 2010) (loss of evidence that was apparently exculpatory before it was lost is due process violation even without bad faith; loss of evidence that was only

"potentially useful" to defense is due process violation only if defendant establishes the government's bad faith). Petitioner develops the argument that the lost clothing was at least "potentially useful" by reference to excerpts from the trial transcripts, which establish that the state's analyst testified that there "possibly" could be evidentiary value to the rest of the clothing. Pet. Reply at 59. Nevertheless, even with this foundation, there is a constitutional deprivation cognizable pursuant to 28 U.S.C. § 2254(e)(1) under Youngblood only if Petitioner can also sustain his burden of showing clear and convincing evidence of bad faith. 488 U.S. at 57-58; Laurent, 607 F.3d at 900; see also Magraw v. Roden, 743 F.3d 1, 7-9 (1st Cir. 2014).

To show bad faith, Petitioner marshals an argument that is – candidly – very difficult to understand.[8] Relying on extensive quotations from trial transcript excerpts, he appears to argue that this loss of evidence must have been bad faith because the evidence was lost only a week after the defense inspection; he also seems to contend that the absence of fluids on the clothes was of evidentiary value so that their loss had to be bad faith. The flaw in the former argument is that it proves nothing about bad faith, while the latter argument fails because the absence of fluid stains on the clothes was conceded by the State and was presented at trial through the testimony of witnesses. At best, Petitioner's quoted transcript excerpts establish that the responsible officer and the analyst testified about the lost clothes at length, that their testimony established that the clothes were lost, that the police had not taken adequate steps to preserve them, that the clothes did not appear to be damaged, torn, or stained, that the appearance of the clothes was preserved in photographs taken by defense counsel and that both witnesses believed

---

[8] In light of Petitioner's *pro se* status, this Court struggled to understand his argument by reviewing every other pleading in which he has articulated his theory about the lost clothing, including an excerpt of his brief on direct appeal, Coram Nobis at 10, what appears to be an excerpt from his petition to the United States Supreme Court, Pet., App. D, and his amended complaint in his § 1983 action, Nickerson v. Providence Cnty., C.A. No. 15-114ML, ECF No. 9-1. None was more enlightening than the arguments presented in this action.

that they had not been tested because there was no need since they were not relevant. Pet. Reply at 59-66. It must be noted that the trial justice instructed the jury that they could draw an adverse inference if they found that the clothing had been "destroyed in an effort to suppress the truth or that it was intentionally destroyed in order to prevent defendant or his attorneys from further examining it."[9]

The only potentially concrete evidence of bad faith was added to the record by Petitioner's "Petitioner-Initiated Motion for Summary Dismissal/Judgment;"[10] it consists of several very recent newspaper reports on charges brought against a Providence Police officer for stealing valuable articles, such as cash and jewelry, from the evidence storage locker. ECF No. 12 at 4-9. This incident involves the stealing of valuable evidence and is completely unrelated to the loss of the victim's clothing in Nickerson. These newspaper articles do not move the meter in establishing bad faith by the police in this case. "The mere fact that the police had control over evidence and failed to preserve it is insufficient, by itself, to establish bad faith, nor will bad faith be found in the government's negligent failure to preserve potentially exculpatory evidence." Malcum v. Burt, 276 F. Supp. 2d 664, 683 (E.D. Mich. 2003).

When stripped of hyperbole, Petitioner's lost clothes argument rests on an inadequate factual foundation: he has shown that the State failed to preserve evidence that had been examined and photographed by his attorney before it went missing, that all of its potentially exculpatory features (no obvious damage, tears or stains and its provocative appearance) were in

---

[9] In Petitioner's § 1983 action, the amended complaint refers to the lost clothing argument, Nickerson v. Providence Cnty., C.A. No. 15-114ML, ECF No. 9-1; it discloses that the trial justice gave the jury an adverse inference instruction regarding the lost clothing: as Petitioner quotes from the transcript, "[y]ou may draw such an inference if, for example, you believe that the clothing was destroyed in an effort to suppress the truth or that it was intentionally destroyed in order to prevent defendant or his attorneys from further examining it. . . . On the other hand, such an adverse inference may not be warranted if the circumstances surrounding the [[alleged] missing clothing] demonstrate a reasonable or innocent explanation for its loss." ECF No. 9-1 at 40 (¶¶ 300-01).

[10] This is Petitioner's newly filed motion that has not been referred to me. See n.2 supra. Although the motion is not before me, I have considered the evidence attached to it in the interest of judicial efficiency.

evidence at trial, and that there is no coherent evidence of bad faith. This is far from the clear and convincing evidence required to rebut the presumption of the correctness of the state court decision. 28 U.S.C. § 2254(e)(1). I find that there is no merit in Petitioner's argument that the loss of this evidence resulted in a decision by the state courts that was contrary to the well-established federal law set out in <u>Trombetta</u> and <u>Youngblood</u>.

To the extent that this Court addresses the merits of the exhausted grounds in this mixed petition, I recommend that the claim of error in Ground Four should be rejected.

**D.     Stay or Abey**

This case does not present the limited circumstances that would make it appropriate for the Court to stay and abey pending resolution of the state court post-conviction proceeding. Petitioner has not presented any evidence demonstrating good cause or meritorious claims to excuse his failure to exhaust a complete round of his state court remedies. <u>Chiellini</u>, 2015 WL 3441910, at *3 (citing <u>Josselyn</u>, 475 F.3d at 4).

**E.     Motions for Judgment on the Pleadings and Preliminary Injunction**

Petitioner filed two additional motions in this case, a Motion for Judgment on the Pleadings (ECF No. 8), which asks this Court to grant the writ and order his release, and a Motion for Preliminary Injunction (ECF No. 9), which argues that, because his petition is likely to succeed on the merits and he is not a flight risk, he should be released on personal recognizance while this petition is pending. In light of the recommendation that the petition should be dismissed based on the failure to exhaust as to some claims of error and the lack of merit as to the remainder, I recommend that both motions be denied.

**IV.     CONCLUSION**

For the foregoing reasons, I recommend that Petitioner be given the opportunity to dismiss his unexhausted claims (Grounds One and Three and the unexhausted portion of Ground Two). If within thirty days of the Court's adoption of this report and recommendation, Petitioner elects dismissal of all of the unexhausted claims, I recommend that the Court resolve the rest of his petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus (ECF No. 1) by dismissing the remaining claims because they are without merit. If Petitioner declines to dismiss his unexhausted claims within thirty days of the adoption of this report and recommendation, I recommend that the Court grant the State's Motion to Dismiss Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody (ECF No. 3) and dismiss the entire petition as a mixed petition for which there is no basis for a stay. I further recommend that Petitioner's Motion for Judgment on the Pleadings (ECF No. 8) and Motion for Preliminary Injunction (ECF No. 9) be denied.

Any objection to this report and recommendation must be specific and must be served and filed with the Clerk of the Court within fourteen (14) days after its service on the objecting party. See Fed. R. Civ. P. 72(b)(2); DRI LR Cv 72(d). Failure to file specific objections in a timely manner constitutes waiver of the right to review by the district judge and the right to appeal the Court's decision. See United States v. Lugo Guerrero, 524 F.3d 5, 14 (1st Cir. 2008); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980).


/s/ Patricia A. Sullivan
PATRICIA A. SULLIVAN
United States Magistrate Judge
July 7, 2015